IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                              No. CR 03-2024 RB

JOSE LUIS ARELLANO-ARALUCE,

Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Motion to Dismiss the Indictment (Doc. No. 26), filed on February 20, 2004. On March 12, 2004, the Court held an evidentiary hearing on Defendant's motion. Having fully considered the pleadings of record, the applicable law, the evidence and arguments of counsel presented at the hearing, and being fully advised in the premises, the Court finds that the motion is not well-taken and should be denied.

## I. Background

On March 17, 1993, Mr. Arellano pleaded guilty to Possession with Intent to Distribute more than 100 kilograms of marijuana. Gov.'s Resp. to Def.'s Mot. to Dismiss 2; Doc. No. 27. On September 27, 1993, Mr. Arellano was sentenced to sixty months imprisonment. *Id.* Mr. Arellano served forty-seven months and was released to INS custody. *See id.* at 3. INS began deportation proceedings against Mr. Arellano while he was completing his sentence. *Id.* During several deportation proceedings, more than one Immigration Judge informed Mr. Arellano that he may be eligible for relief under Section 212(c) of the Immigration and Nationality

Act. *Id.* at 2-3. On or about February 13, 1996, Mr. Arellano filed an application for relief under Section 212(c). *Id.* at 3. After several hearings, Mr. Arellano's application for Section 212(c) relief was denied. *Id.* On June 6, 1997, Mr. Arellano appealed to the Board of Immigration Appeals (BIA). *Id.*

On or about February 13, 1998, Mr. Arellano withdrew his appeal apparently out of a desire to avoid further detention. *Id.* On March 2, 1998, Mr. Arellano was deported to Mexico. *Id.* On October 8, 2003, a federal grand jury returned an indictment charging Mr. Arellano with Reentry of a Deported Alien Previously Convicted of an Aggravated Felony in violation of 8 U.S.C. § 1326(a)(1) & (2) and 8 U.S.C. § 1326(b)(2). *Id.* at 1. Mr. Arellano then filed his motion to dismiss the indictment collaterally attacking the underlying removal order. Doc. No. 26.

## II. Discussion

Title 8 U.S.C. § 1326(d) defines when a collateral attack on an underlying removal order may take place. Title 8 U.S.C. § 1326(d) states:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that: (1) the alien has exhausted any administrative remedy that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (1988).

Accordingly, the burden is on Mr. Arellano to demonstrate that: (1) he exhausted all administrative remedies; (2) the deportation proceedings, at which the order was issued, improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. In order to collaterally attack the deportation order, Mr. Arellano has to

2

establish all three elements. Mr. Arellano's argument fails each of the elements of 8 U.S.C. § 1326 (d).

With respect to the first element of 8 U.S.C. § 1326(d), Mr. Arellano did not exhaust all his administrative remedies. First, Mr. Arellano was aware of his administrative remedies, as evidenced by his filing and briefing an appeal with the BIA. Gov.'s Resp. to Def.'s Mot. to Dismiss; Gov.'s Ex. 9. A review of Mr. Arellano's memorandum in support of his appeal is quite revealing. In his memorandum, Mr. Arellano analyzes Section 212(c) and its different administrative and judicial interpretations. *Id.* In total, Mr. Arellano cites to five cases and provides in-depth analysis of two, *Yesil v. Reno*, 958 F.Supp. 828 (S.D.N.Y. 1997) and *Reyes-Hernandez v. I.N.S.*, 89 F.3d 490 (7th Cir. 1996). *Yesil* and *Reyes* dealt extensively with the issue of Section 212(c) and its corresponding administrative remedies.

Second, Mr. Arellano understood the nature and consequences of the 1997 deportation order. On June 7, 1995, the Immigration and Naturalization Service (INS) issued an order to show cause, informing Mr. Arellano of his pending deportation. Gov.'s Resp. to Def.'s Mot. to Dismiss, Gov.'s Ex. 3. Thereafter, Mr. Arellano attended four separate deportation hearings. *Id.* at 2-3. On September 18, 1995, during the deportation proceeding, the Immigration Judge continued the hearing and permitted Mr. Arellano more time to prepare his case or consult with an attorney. *Id.* at 2. On November 29, 1995, another hearing was held, at which time, the Immigration Judge informed Mr. Arellano that he may be eligible for relief under Section 212(c). *Id.* In August of 1996, Mr. Arellano appeared before a different Immigration Judge by video and was again informed that he may be eligible for relief under Section 212(c). *Id.* at 3. Finally, on May 14, 1997, during Mr. Arellano's final deportation hearing, the Immigration Judge explained, in detail, the dimensions of Section 212(c). *Id.*; Gov.'s Ex. 8.

3

Notwithstanding Mr. Arellano's extensive briefing of the administrative remedies surrounding Section 212(c), he voluntarily withdrew his appeal of the 1997 deportation order. *Id.*; Gov.'s Ex. 11. Mr. Arellano's March 1, 1998 letter to Officer Davila stated:

> I am Jose Luis Arellano-Aralucc, I wrote a request to you on 2-13-98 about me withdrawing my appeal. I did contact the BIA and they did sent [sic] me the withdraw papers, I received them on 2-25-98 saying that it is already withdrawed [sic]. So I ask respectfully to be deported to my country as soon as possible with out seeing the judge if you could. Because I have swear [sic] to my deportation to a judge at B.S.C.C. Big Spring Tx. I am here for room and board. I respectfully thank you for taking the time to read this letter.

Mr. Arellano counters that he did not voluntarily withdraw his appeal because he relied on the advice of an INS employee. Specifically, Mr. Arellano claims an INS employee informed him that: (1) he was not eligible for bond; and (2) he would remain incarcerated throughout the appellate process. In light of Mr. Arellano's extensive exposure to the deportation process, Section 212(c), and its administrative remedies, the Court does not find Mr. Arellano's contentions persuasive.

In *United States v. Avila-Gonzalez*, 201 F.3d 449, 1999 WL 1037572 *3 (10th Cir. 1999) (unpublished disposition), the Tenth Circuit addressed the concerns raised by Mr. Arellano. Like Mr. Arellano, the defendant in *Avila* waived his right to appeal by a written waiver out of a desire to avoid further incarceration. *Id.* Defendant re-entered the United States and was charged and convicted under 8 U.S.C. § 1326(a). *Id.* at *1. Claiming he did not knowingly and voluntarily waive his appellate rights, defendant moved the district court to dismiss the indictment. *Id.* at *1-*2. Defendant argued, inter alia, that he was not fluent in English, and that his attorney never read or explained the document he had signed. *Id.* at *3.

During the evidentiary hearing, the government called defendant's counsel who testified he had no difficulty conversing in English with defendant. *Id.* Rather, the evidence revealed

4

defendant, after being jailed on parole violations, informed his attorney that he wanted to be deported to Mexico immediately to avoid any additional incarceration in state prison. *Id.* The district court found defendant's testimony questionable and denied the motion. *Id.*

Applying a clearly erroneous standard to the district court's factual findings, the Tenth Circuit affirmed. *Id.* In denying defendant's collateral attack under 8 U.S.C. § 1326(d), the *Avila* court gave great weight to the fact that defendant voluntarily and knowingly waived his rights in the deportation proceedings and stipulated to an immediate deportation. *Id.* Significantly, in *Avila*, the government conceded that defendant had exhausted all of his administrative remedies and focused entirely on the constitutional- fundamental fairness- standard as articulated in *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-39 (1987). *Id.* at *2 n. 3. Even under this higher standard, the Tenth Circuit rejected defendant's argument.

Similarly, in the instant case, the Court finds Mr. Arellano's testimony lacking in candor. During the hearing, the evidence showed that Mr. Arellano arrived in the INS facility on January 24, 1998. Mr. Arellano testified that he had written three or four letters to the Immigration Judge requesting bond while in INS custody. On or about February 13, 1998, Mr. Arellano asked to withdraw his appeal. Thus, during the course of approximately twenty days, Mr. Arellano wrote three to four letters to the Immigration Judge and withdrew his appeal. During such a short period of time, the Immigration Judge scarcely would have had time to respond to the first of Mr. Arellano's letters, let alone the second, third, or fourth. Apparently, Mr. Arellano was more interested in an immediate release than the Immigration Judge's response. This conclusion is also consistent with Mr. Arellano's March 1, 1998 letter requesting that he be returned to Mexico.

5

With regard to the second element of 8 U.S.C. § 1326(d), Mr. Arellano was not deprived of judicial review of his removal. As set forth in 8 U.S.C. § 1252, an alien may file a petition for review of removal proceedings in federal court to challenge the findings of an Immigration Judge or Board of Administrative Appeals. Indeed, Mr. Arellano realized this, as evidenced by his memorandum relying heavily on *Reyes*, a case involving an extensive appeal. Gov.'s Resp. to Def.'s Mot. to Dismiss, Gov. Ex. 9. In fact, as discussed *supra*, Mr. Arellano initially appealed the 1997 deportation order. *Id*. If the Board of Immigration Appeals had ruled unfavorably on Mr. Arellano's appeal, he could have pursued his appeal all the way to the Supreme Court. *See I.N.S. v. St. Cyr*, 533 U.S. 289 (2001). However, Mr. Arellano voluntarily waived his appellate rights to avoid further incarceration. Accordingly, Mr. Arellano was not deprived of judicial review.

The third element of 8 U.S.C. § 1326(d) requires Mr. Arellano to show that the entry of the 1997 deportation order was fundamentally unfair. While this Court is aware that the concept of "fundamental fairness" has not been fully developed by the Tenth Circuit and that there are two lines of cases relevant to this issue, the Court will follow the view articulated in *United States v. Mendoza-Lopez*, 481 U.S. 828, 838-839 (1987) and *United States v. Aguirre-Tello*, 353 F.3d 1199, 1204-1205 (10th Cir. 2004). In the *Mendoza* and *Aguirre* genre, fundamental fairness focuses on procedural due process and asks whether the alien facing deportation was provided with: (1) a hearing, (2) notice of the charges, and (3) an opportunity to be heard. Under this view, an inquiry into the substantive law applied at the alien's deportation hearing is not relevant to the issue of fundamental fairness. *United States v. Torres*, 268 F.Supp.2d 455, 462 (E.D. Pa. 2003).

Applying the reasoning of *Mendoza* and *Aguirre* to the present case, Mr. Arellano's deportation order was not fundamentally unfair. The evidence shows that on June 7, 1995, INS informed Mr. Arellano of his pending deportation, providing him with notice as to the time, place, and date of the deportation hearing. Gov.'s Resp. to Def.'s Mot. to Dismiss, Gov.'s Ex. 3. Additionally, Mr. Arellano was given an opportunity to be heard on four separate occasions. *Id.* at 2-3.

Mr. Arellano argues that because the Immigration Judge erroneously deprived him of an opportunity for relief under Section 212(c), entry of the deportation order was fundamentally unfair. However, a legal error applied to a deportation hearing does not rise to the level of a due process violation, rendering the deportation hearing fundamentally unfair. *See Torres*, 268 F.Supp.2d at 463. Accordingly, the Court finds that the entry of Mr. Arellano's deportation order was not fundamentally unfair.

## III. Conclusion

To collaterally attack a deportation order, Mr. Arellano must demonstrate that: (1) he exhausted all administrative remedies; (2) the deportation proceedings, at which the order was issued, improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. Because the Court finds Mr. Arellano did not exhaust all his administrative remedies, was not deprived of judicial review, and the entry of the order was not fundamentally unfair, his challenge of the validity of the underlying deportation order must fail. Accordingly, Mr. Arellano's motion should be denied.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss the Indictment (Doc. No. 26), filed on February 20, 2004, is **DENIED.**

ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE